UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X   Docket#
UNITED STATES OF AMERICA,      :   05-cr-508(ERK)
                               :
     - versus -                :   U.S. Courthouse
                               :   Brooklyn, New York
AKRAM ISMAIL,                  :
                Defendant      :   October 12, 2006
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE EDWARD R. KORMAN
UNITED STATES DISTRICT JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government**:          **Benton Campbell, Esq.**
                                 United States Attorney

                          BY:    **Walter Norkin, Esq.**
                                 Assistant U.S. Attorney
                                 271 Cadman Plaza East
                                 Brooklyn, New York  11201


**For the Defendant**:           **Gerald Shargel, Esq.**
                                 **Emilio Grillo, Esq.**
                                 **Evan Lipton, Esq.**
                                 570 Lexington Ave.
                                 New York, New York


**Official Transcriber**:        **Rosalie Lombardi**
                                      **L.F.**


**Transcription Service**:       **Transcription Plus II**
                                 3859 Tiana Street
                                 Seaford, N.Y.  11783
                                 (516) 358-7352
                                 Transcriptions2@verizon.net


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

### Proceedings

1              THE CLERK:  United States v. Akram Ismail.

2              Your appearances, counsel.

3              MR. NORKIN:  Walter Norkin for the government.

4              Good afternoon, your Honor.

5              THE COURT:  Hi.

6              MR. NORKIN:  And with me, your Honor, are

7       Federal Air Marshals John Balder and Scott Carpenter

8       (ph.).

9              MR. SHARGEL:  Gerald Shargel, Emilio Grillo and

10      Evan Lipton for Dr. Ismail.

11             Good afternoon.

12             THE COURT:  Mr. Ismail, have you read the

13      presentence report?

14             THE DEFENDANT:  Yes.

15             THE COURT:  All right.  I am ready to hear you.

16             MR. SHARGEL:  Well first we have guidelines

17      issues.  There are two issues that survived.  One is that

18      -- well it may not survive in light of Mr. Garoppolo's

19      comments but we've got the addendum to the presentence

20      report.  They stuck by their guidelines analysis.

21      There's a two level enhancement for obstruction and

22      Mr. Garoppolo said that he didn't find -- he said it was

23      a close call.  He says, "I concede on the two level

24      enhancement for obstruction of justice as a close call

25      and a necessary element of a willful intent to mislead

3

## Proceedings

1  with his testimony.  We made a submission on this, Judge

2  and I don't believe that this is the kind of testimony

3  that would require an enhancement under 3(c)(1.1).

4           THE COURT:  Well, you know --

5           MR. SHARGEL:  The other guidelines issue -- do

6  you want me to do both of them?

7           THE COURT:  Well let him address it.

8           MR. NORKIN:  Your Honor, the government also

9  made a submission on this and we do think this is the

10 kind of thing that would call for an enhancement.  And in

11 fact, the full sentence by Mr. Garoppolo is that I

12 believe the advisory guideline range in the report, 18 to

13 24 months is correctly computed.  The language was pretty

14 unequivocal.  I understand counsel now states that there

15 was confusion and there was different testimony but the

16 kind of testimony that was given by the defendant is

17 something that would fall in the government's view within

18 the obstruction of justice category.

19          MR. SHARGEL:  Can I say one thing in response?

20 There were  a number of witnesses who testified here that

21 gave contradictory testimony about what had occurred

22 hurriedly in a matter of a minute or two.

23          THE COURT:  I agree that it doesn't warrant two

24 points.

25          MR. SHARGEL:  And, Judge, the other issue deals

4

**Proceedings**

1    with the physical contact.

2            THE COURT:  We're dealing here with deliberate

3    perjury and, you know, who knows which recollection was

4    the most accurate.  The jury's was verdict was clearly

5    supported by the record.  But that doesn't mean he lied

6    deliberately.  So where is it?  What page are we on?

7            THE CLERK:  What paragraph?

8            MR. SHARGEL:  One moment, Your Honor, please.

9            MR. NORKIN:  It's paragraph 17, obstruction of

10   justice.

11           THE COURT:  Okay.  What else?

12           MR. SHARGEL:  The three level enhancement for

13   physical contact.  You may recall that you charged the

14   jury that they could only find an resisting arrest under

15   this statute if there was physical contact.  Then the

16   guidelines 2(a)(2.4)(A). under that guideline, the

17   application -- the enhancement is actually

18   2(a)(2.4)(B)(1).  There's an enhancement for physical

19   contact.  Whether it's a question of fairness, whether

20   it's a question of interpretation, it would seem to me

21   that the enhancement essentially raises the base offense

22   level to 13 rather than 10.  The base offense level was

23   10 for the conduct and then three for physical contact,

24   but as your Honor instructed the jury, there could not be

25   a finding of guilt beyond a reasonable doubt unless they

5

**Proceedings**

1   found as an element of the offense that it was physical

2   contact.

3          So I have read all of the double-counting

4   cases.  I don't know that it's double-counting in the

5   traditional sense.  I don't know if it's a Lauerson (ph.)

6   issue but I don't see how -- essentially, he is being

7   punished twice for physical contact.

8          THE COURT:  In other words, I assume your

9   argument is that this is necessarily included in the base

10  level because that's the offense.

11         MR. SHARGEL:  Exactly.

12         THE COURT:  That's an interesting argument.

13  What's the answer to that?

14         MR. NORKIN:  Well we agree again with the

15  probation department here and cited cases that you don't

16  need physical contact to be convicted of 18 USC 111.  The

17  reason you charge forceable conduct is because the

18  government said that we only wanted that kind of

19  conviction, a felony of the highest of the various levels

20  that would be necessary to be guilty under Section 111.

21  So this is not a double-counting.  It's a proper

22  enhancement for a type of Section 111 violation.

23         THE COURT:  So what you're saying -- let me be

24  sure I understand, so what you're saying is that the base

25  level offense would have been the same, even if there

6

**Proceedings**

1   were no finding of physical contact.

2          MR. NORKIN:  That's correct.

3          THE COURT:  And did I give the jury a separate

4   verdict sheet or I just instructed them that way?

5          MR. NORKIN:  No, you --

6          MR. SHARGEL:  You had instructed them that in

7   order to find him guilty of that count, they have to find

8   physical contact.

9          MR. NORKIN:  You asked the government first if

10  we wanted to break it up and if -- I recall correctly,

11  your Honor, and the government's position was that we

12  were not interested in the jury finding him guilty of a

13  misdemeanor or anything less than the highest.  And so

14  therefore, that -- the instruction was just for forceful

15  contact.

16         THE COURT:  I think that that's -- I don't

17  think it's double-counting.  Forget about what the cases

18  say about double-counting.  I don't see it as -- it's an

19  aggravated form of this offense.  If I understand what

20  you're arguing correctly -- maybe I don't.  If I hadn't

21  charged physical contact, the juries could have only

22  convicted him of a misdemeanor.

23         MR. SHARGEL:  No, no.  Because the only thing

24  you charged was assault with physical conduct.

25         THE COURT:  I know, but I am going to - I

7

**Proceedings**

1   hadn't charged physical contact.  The jury could have

2   convicted him --

3          MR. NORKIN:  Correct, of a misdemeanor --

4          THE COURT:  -- but only a misdemeanor.

5          MR. NORKIN:  -- Section -- it's the same

6   section but it would have been a misdemeanor violation,

7   as opposed to a felony.  It would not have been

8   punishable by over a year.

9          THE COURT:  And what is a level 10?  What is

10  the punishment for a level 10?

11         MR. SHARGEL:  It's in the B zone, 6 to 12

12  months.

13         THE COURT:  Why don't we go on and see whether

14  it makes a difference.  What is the sentence with a -- as

15  a 13, what are the guidelines for the moment?

16         MR. NORKIN:  I don't have 13 here.

17         THE CLERK:  12 to 18 months, Judge.

18         THE COURT:  All right.

19         MR. SHARGEL:  May I be heard then?

20         THE COURT:  Yes.

21         MR. SHARGEL:  Judge, I would like to get right

22  to the point.  I understand -- and this is the first time

23  I saw this recommendation by Mr. Garoppolo four months --

24         THE COURT:  You want more time to respond to

25  it?

8

**Proceedings**

1          MR. SHARGEL:  No, no, no.

2          THE COURT:  Okay.

3          MR. SHARGEL:  I've ample time to respond to it

4   because it's a very simple point. And it's a point that's

5   compelling.  The compelling point is that I couldn't

6   think of a more destructive result here than a prison

7   sentence for Dr. Ismail and I would like to tell you just

8   exactly why.

9          This is someone who since he was arrested in

10  this case in 2005, has done everything that he could

11  possibly do to put his life back together.  This is not

12  someone who was simply arrogant.  This is someone who was

13  under enormous stress and there's no question about that.

14  There's nothing in the government's letter that suggests

15  otherwise.

16         Your Honor knows that he suffered from as the

17  probation department found, cyclothymic disorder, a

18  disorder concerning depression.  But not only that, his

19  wife has been struggling with addiction.  She was

20  confined several times for her addiction.  There are four

21  young children here.  She is a woman who is incapable of

22  caring for the children.  She is at home now.  She is

23  back from her place of confinement but she is home now.

24  She sees a psychiatric twice a week.  This is a very,

25  very difficult circumstance.  Dr. Ismail at the time of

9

### Proceedings

1  this offense was under enormous stress.  He has done

2  everything he could to put his life back in order. His

3  reputation was destroyed in the small town in which he

4  practices medicine.  He has worked very hard to

5  rehabilitate that situation.  He is just getting his

6  practice -- he is just getting back on his feet and if he

7  were sentenced to prison for any period of time, his

8  practice would be destroyed.  He couldn't suffer another

9  blow.  He couldn't suffer a headline and there were

10  headlines in the paper that said that Dr. Ismail was

11  convicted of this crime.  It received a great deal of

12  attention in Florida.  And the idea that he would have to

13  leave his practice and leave his family, leave his wife,

14  and go off to prison, I think is just fundamentally

15  unfair.

16          I don't know if Mr. Garoppolo, and you know I

17  have the deepest respect for him, but I don't know if he

18  read the submission that was made on behalf of Dr.

19  Ismail.  I don't know if he read the letters from

20  patients, from other doctors that support him and talk

21  about his good deed.  This man has been successful in

22  putting his life back together.

23          You know what Mr. Garoppolo says in the last

24  sentence, he says, I think -- and I will read it in its

25  entirety, no 106 problem here, "I think that kind of a

10

**Proceedings**

1  sobering experience," talking about a term of

2  imprisonment, "is necessary and will do him some good."

3        He has had this sobering experience.  He is

4  being monitored by the Physician Resources Network.  If

5  you look at the contract that we have in our memorandum,

6  we show that he has the strictest supervision, urine

7  testing, psychiatric care, careful monitoring.  This

8  appears under tab A.  We have letters from the

9  Physician's Network, the Resources Network and they say

10  he's been successful.  He's been compliant.  He's in

11  therapy once a week.

12        He is dealing with his depression.  He is

13  dealing with all of these circumstances.  And this -- the

14  idea of going to prison and leaving his environment for

15  any period of time, not being able to participate in the

16  Physician's Resources Network will destroy this man.  You

17  don't hear me say that in every case that I appear before

18  you.  I firmly believe that this -- that four months or

19  four days would literally destroy this man.  You're going

20  to send a man who is suffering from depression, who has

21  faced a devastating blow to his career, he's putting his

22  life back together, the post-arrest rehabilitation has

23  been extraordinary, he no longer drinks, he no longer is

24  suffering from the kind of condition that caused his

25  behavior in the first place.

11

## Proceedings

1        I recognize that there was an earlier incident.

2   I recognize the events that took place here that led to

3   this conviction; I understand all of that.  But I think

4   that Dr. Ismail needs continued monitoring.  I think that

5   he has to have the opportunity to put his life back

6   together.  He has four very young children.  He has twins

7   who are three years old.  He has a ten year old daughter

8   and an eight year old daughter.

9        And to suggest that prison is an appropriate

10  result here, I respectfully submit to your Honor that if

11  there's any case that cries out for a non-custodial term,

12  this is that case.  I can't think of a case more

13  compelling for a non-custodial term than this case.  And

14  I ask you, as a matter of reason and fairness, to impose

15  a non-custodial term.

16        The probation department -- the probation

17  officer that wrote the report said that apart from the

18  guidelines, that there are mitigating factors here; his

19  own condition of depression, his spouse's condition, care

20  for the children.  That's what the probation officer

21  said.  And to suggest that -- look, a sobering

22  experience, I understand that but he has had a sobering

23  experience.  You don't think that for a man like Dr.

24  Ismail to come to this courtroom and go through this

25  process that it wasn't sobering, but it wasn't only that.

**Proceedings**

1   I invite your Honor to look at this contract that appears

2   under the tab and look at what he is required to do and

3   you have the letters from the treating psychiatrist

4   saying that he is making progress.  This is just going to

5   make the whole thing go backwards.  This is -- I can't

6   say the word often enough.  This would be total

7   devastation and destruction if he were sent away.

8          Prison is not the answer to everything.  I know

9   we come near the point where it's almost common place

10  that prison's a good idea, prison is sobering, prison is

11  helpful.  Prison is not a good idea here.  Prison is an

12  awful idea here.

13          MR. NORKIN:  Your Honor, this is a defendant

14  who never accepted and still doesn't accept

15  responsibility for his actions.  He accepts

16  responsibility for the results in that he was convicted

17  in a court but he is not someone who has accepted

18  responsibility for what he did, the damages that he did

19  in doing those actions for all of the passengers who were

20  on board the plane.

21          He had very similar conduct almost identical,

22  except it was in a car except than rather on a plane the

23  last time and at that time, he got a slap on the wrist.

24          The things that defense counsel say are

25  compelling about his situation, that it would hurt his

13

## Proceedings

1  business and hurt is family is the same thing that

2  applies to any defendant and there's no reason that this

3  defendant should get different treatment and better

4  treatment because he's a doctor.  He should be treated

5  the same way as if he were a plumber, not another slap on

6  the wrist like he did last time.

7             MR. SHARGEL:  If he were a plumber, I would be

8  making the same argument, if he had a four children with

9  a dysfunctional mother.  If he were a plumber, I would be

10  making the same argument, he suffered from this type of

11  depression.  If he were a plumber, I would be making the

12  same argument if he had this extraordinary post-arrest

13  rehabilitation.

14             You know, I would like to read the last --

15  actually, it's the last sentence of the ultimate

16  paragraph of the government's letter.  "Indeed, it should

17  be noted that had the defendant gotten off the airplane

18  when he was asked first by the gate agents and then by a

19  federal marshal, he would not have been prosecuted."

20             He made a mistake not getting off the airplane

21  but this was not the crime of the century.  The walls of

22  the Republic will not crumble if he is sentenced to a

23  non-custodial term.  This would be, I will say it again,

24  because it can't be (inaudible) said, this would be

25  devastating if he were sent to prison.  A life would be

14

**Proceedings**

1  ruined.

2          MR. NORKIN:  Your Honor, the government

3  concedes that this is not the crime of the century but to

4  sentence this man to probation would be very different

5  from all of the other defendants that are in this

6  courthouse.  And it would be a sentenced based, it seems,

7  because he is a doctor and not a plumber.

8          THE COURT:  No, it wouldn't be based on that.

9  One of the recommendations that was made by the probation

10  officer who prepared the report separate from

11  Mr. Garoppolo; I get his views in certain cases

12  independently, was that they also recommended a downward

13  departure of the advisory guidelines.  But they have an

14  interesting suggestion here that seems to me to

15  accommodate both the necessity for some time in jail with

16  the concerns that you voice which is making -- let's just

17  set aside the number of days for the moment, making X

18  number of days of intermittent confinement, as a

19  condition of probation to be served on weekends.  I don't

20  think that would have -- I think that could accommodate

21  what I agree with Mr. Garoppolo is that some period of

22  confinement here.  On the other hand, it would not

23  decimate his practice.

24          And I think depending upon you know, the length

25  of the time it wouldn't necessarily pose an undue burden

15

**Proceedings**

1   on his family  So that's -- I thought that was a very

2   useful suggestion by the probation officer who actually

3   prepared this report.

4            MR. SHARGEL:  You know, ordinarily when you ask

5   the defendant whether he has anything to say, he's

6   looking for a statement --

7            THE COURT:  Well I haven't asked him yet.

8            MR. SHARGEL:  I understand that.

9            THE COURT:  But I am just giving you an

10  opportunity to address you know, a sentence that I am

11  seriously contemplating.

12           MR. SHARGEL:  Well what I was starting to say

13  which is why -- let me do it this way.  May I just have a

14  -- can I just speak to my client and then measure the

15  impact of such a sentence?

16           THE COURT:  Right.

17           (Counsel and client confer)

18           THE COURT:  Mr. Shargel?

19           MR. SHARGEL:  Judge, would this conviction --

20  may I -- sorry, are we ready?

21           THE COURT:  I would be shocked if you told me

22  you agreed with it but I just want to hear your

23  arguments.

24           MR. SHARGEL:  Well here's my argument.  When

25  the conviction occurred, Dr. Ismail lost his partners.

**Proceedings**

1  They walked away.

2          THE COURT:  I understand.

3          MR. SHARGEL:  And if I may continue; he has no

4  one to cover his practice on the weekend.  So he

5  essentially works seven days a week.  I am not talking

6  about a full day but he works seven days a week because

7  he is not -- his patients aren't covered.

8          In addition to that, his wife is being

9  constantly monitored and could go back into a confinement

10  situation if she fails.  And I will tell you candidly

11  right now, she is doing well but she is being monitored

12  every week.  She sees a professional twice a week.

13          THE COURT:  Look, I have -- my internist until

14  he retired a couple of months ago was a single

15  practitioner.  And when he went away for the weekend,

16  another person covered for him.  He didn't have partners.

17  It's not necessary to have partners to have somebody

18  cover for you on weekends.

19          MR. SHARGEL:  It's a matter of building up --

20  ver the last year and a half, he's built up his

21  credibility again.  It was a struggle and I think it

22  would damage his credibility.

23          THE COURT:  All right.  Let me --

24          MR. SHARGEL:  Judge, may I just put this before

25  you?  I don't want to belabor it.  And I understand what

17

**Proceedings**

1    you're saying.  I full well understand what you're

2    saying.  But in terms of societal interest, in terms of

3    the individual's needs, that's essentially what you're

4    really balancing here because I don't think -- I don't

5    know that it's that he needs those weekends to continue

6    his course of rehabilitation.

7              THE COURT:  No, there is -- look, among other

8    factors in 3553 is fundamentally the need to deter

9    others.  I mean, you know, this was a -- all right, the

10   plane wasn't in the air fortunately, so it didn't have to

11   land to deal with this problem but it had to turn around.

12   It had to go back to the boarding gate.  People were

13   inconvenienced.  He behaved like a jerk.  You know, he

14   resisted the officers who had to carry him off the plane.

15   He was given a last chance to avoid all of this.

16             I mean I think the guidelines are way too high

17   here but I don't see this as a case that does not involve

18   -- that involves essentially walking out of here without

19   any jail consequence.

20             Do you wish to speak before I impose sentence?

21             THE DEFENDANT:  Yes, sir.  I have worked for

22   many years as a physician and I've had a very, very tough

23   time the past few years.  I've had the most sobering, the

24   most humbling, the most humiliating experience.  When

25   this all happened, the physician at work would assume

**Proceedings**

1    that I am not a functioning physician and I can't

2    practice.  I went for several evaluations.  I've been

3    monitored weekly.  I've done everything I am asked to do,

4    regardless of what it is.  I have tried to keep my

5    practice together.  The physicians that were with me

6    wouldn't cover me, wouldn't be part of my practice

7    period.          The building that I am practicing in said

8    stay away from that building.  Don't go see any doctor

9    there.  I do not have anyone that supports me and my

10   practice or taking care of my business.

11          I have not saved any effort to do anything I am

12   asked to do for the past year and a half; not one thing,

13   regardless of what it is.  I don't see -- I didn't think

14   I am going to get -- I worked very, very hard for the

15   past year and a half to get where I am now.  I don't want

16   to go back to where I was.  I have not questioned

17   anything that I am asked to do. I just do it.

18          I've learned the hard way.  I did not argue.  I

19   don't want -- I didn't say I am above anything I should

20   do.  I don't want to go back to where I was a year and a

21   half ago.  If I do anything wrong during the past --

22   during the next five years, anything, my license all they

23   have to do is they make a phone call and tell me stop

24   seeing patients.

25          May I have some water?  I can't --

Proceedings

1      MR. SHARGEL:  Yes.

2      (Pause)

3      THE DEFENDANT:  The Physician Network

4  Monitoring program deals with a physician that they call

5  impaired physician, as if they are a criminal, as they

6  are addicts, whether they are or not.  They have to

7  follow all of the rules, otherwise they can't practice.

8          I tried not to miss a single day of work since

9  this happened.  I've tried to take care of my family.

10  I've tried to have some normalcy in my children's life.

11  I don't know if I can handle more than what I have been

12  doing.  I have not saved any effort to do the right

13  thing.

14          I've learned more than -- I've learned to just

15  do the right thing and not question anything I do to

16  prove credibility, and to go back to my normal life.  I

17  have not done anything wrong since this happened.  I

18  can't do anything wrong, your Honor.

19          Going to prison or jail is not going -- I'm

20  sorry, I am just -- I am not making this up, I am not

21  trying to -- I am not trying to -- I don't know, I am --

22  yes.  I never thought I would ever get that far.

23          (Pause)

24      THE DEFENDANT:  Your Honor, I am not making

25  this up.

20

# Proceedings

1     THE COURT:  I can't hear you.

2     THE DEFENDANT:  Your Honor, I am not making

3  this up.  I have been trying to do the right thing for a

4  year and a half and I am willing to do the right thing as

5  long as I am asked to.  But I need some normalcy in my

6  life to get back to where I should be with -- however I

7  acted, it's behind me now.  I just want to move forward.

8     THE COURT:  I am going to downwardly depart

9  from the advisory guideline range.  The sentence that I

10 am about to give moots the unresolved question regarding

11 that three point enhancement.  I am going to place the

12 defendant on probation for three years with a special

13 condition of probation , supervision, that the defendant

14 serve 90 days of intermittent confinement to be served on

15 weekends, that the defendant shall participate in an

16 outpatient and/or drug treatment or detoxification

17 program approved by the probation department.  The

18 defendant shall pay the cost of such treatment or

19 detoxification to the degree that he or she is reasonably

20 able -- he, rather, is reasonably able and shall

21 cooperate in securing any applicable third party payment.

22     The defendant shall not consume any alcohol or

23 other intoxicants during and after treatment.

24 Detoxification unless granted a prescription by a

25 licensed physician and proof of the same is provided to

21

**Proceedings**

1  the probation department, the defendant shall submit to

2  testing during and after treatment to insure abstinence

3  from drugs and alcohol.  The defendant shall participate

4  in mental health treatment program as approved by the

5  probation department.

6          The defendant shall contribute to the cost of

7  such services rendered or any psychotropic medications

8  prescribed to the degree that he is reasonably able and

9  shall cooperate in securing any applicable third party

10  payment.

11          And the defendant shall disclose all financial

12  information and documents to the probation department to

13  assess his ability to pay both for the -- any drugs or

14  other treatment.

15          Now the defendant shall not possess a firearm,

16  ammunition or destructive device.  And I also impose a

17  $100 special assessment.

18          I have downwardly departed essentially for the

19  reasons that are set out in the recommendation of the

20  probation department.  It was written before the

21  defendant's wife was returned home but I think that fact

22  does not change the basis for the downward departure;

23  that is, the probation department wrote that the

24  defendant's spouse suffers from depression and

25  prescription drug use, and is presently in a residential

**Proceedings**

1    treatment program in Georgia.  The couple has four

2    children ranging from three to 10.  They are being cared

3    for by the defendant with the assistance of his brother.

4            The illness of his spouse, combined with his

5    significant employment obligations appear to have created

6    a very stressful environment for the defendant.  Further,

7    when his spouse returns home, she will likely require

8    significant amount of support from the defendant in order

9    to remain drug-free.

10           In addition to coping with his family issues,

11   the defendant also struggles with cyclothymic disorder

12   which is a form of bipolar disorder characterized by

13   alternating periods of depression and hypomania.  It is

14   possible that his behavior in the instant offense was

15   brought on by this condition.

16           Nevertheless, the defendant has demonstrated

17   reckless behavior dating back to at least 1994 and

18   consequences imposed for the above motor vehicle offenses

19   which they elude to earlier, have clearly have had no

20   impact on his conduct.

21           The imposition fo a sentence below the advisory

22   guideline range is viewed as reasonable in view of his

23   mental health and extraordinary family responsibilities.

24   However, intermittent confinement is necessary to meet

25   the requirements of punishment and deterrence.

23

### Proceedings

1    MR. SHARGEL:  Judge, just one point of

2  clarification, if I may.  The order or condition of

3  probation that requires him to participate in a program,

4  I was wondering if you would specifically say that he

5  continue under the terms of his contract, being monitored

6  for Professional Resources Network (sic).

7    THE COURT:  Yes.

8    MR. SHARGEL:  Apparently it is working.

9    THE COURT:  Yes.  Why don't you just send me a

10  -- so when she types up the judgment, I will put that in.

11    MR. SHARGEL:  Very well.

12    THE COURT:  Okay.

13    MR. SHARGEL:  Judge, could you also recommend

14  at the bottom of the judgment and commitment that he

15  serve in a facility, obviously if it's weekends, that is

16  close to his home.

17    THE COURT:  Yes, yes.

18    MR. SHARGEL:  And may we have a post-holiday

19  surrender in early January, to begin serving the

20  weekends.

21    THE COURT:  Yes.

22    THE CLERK:  You said until any time after

23  January 3?

24    MR. SHARGEL:  That's fine.

25    THE CLERK:  Right to appeal?

24

**Proceedings**

1          THE COURT:  Mr. Ismail, you have a right to an

2    appeal.  If you can't afford to pay the filing fee --

3          THE DEFENDANT:  Sorry?

4          THE COURT:  You have a right to an appeal both

5    from the sentence and from any errors that may have been

6    made at the trial.  If you can't afford to pay the filing

7    fee to file a notice of appeal, I would allow you to file

8    a notice of appeal without paying it.

9          Do you understand?

10          THE DEFENDANT:  Okay.

11          THE COURT:  You'll file it.

12          THE CLERK:  Did you understand your right to an

13    appeal?

14          THE DEFENDANT:  Yes.

15          MR. SHARGEL:  I will be filing a notice of

16    appeal within ten days.

17          THE COURT:  Okay.

18          MR. SHARGEL:  And then Mr. -- Dr. Ismail can

19    determine whether he wants to go forward.

20          THE COURT:  Okay.

21          MR. NORKIN:  Thank you, Judge.

22               (Matter concluded)

23                    -o0o-

24

25

25

# C E R T I F I C A T E

I, ROSALIE LOMBARDI, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **10th** day of **December** , 2009.



Rosalie Lombardi
Transcription Plus II